# THE SUPREME COURT

OF

# THE STATE OF LOUISIANA.

EASTERN DISTRICT, JANUARY TERM, 1826.

East'n. District.
*January* 1826.

*FINDLEY* vs. *BREEDLOVE, BRADFORD AND ROBESON.*

FINDLEY
*vs.*
BREEDLOVE,
BRADFORD &
ROBESON.

APPEAL from the court of the first district.

PORTER, J., delivered the opinion of the court. This action was commenced to recover the amount of three several bills of exchange, drawn by the house of William Greene & Co. of Cincinnati, on the defendants, and accepted by them.

These bills appear to have been for the balance due for a steam engine furnished by the drawers, to the present defendants; and, it being admitted that the plaintiff is a partner in the house of William Greene & Co., the same

The party in whom the *legal* title is vested, has the right to sue.

Partnership debts cannot be compensated by a demand against an individual member of the firm.

Damages on the warranty of goods sold, is not confined to the price of them.

When the agent exceeds his authority, the prin-

East'n District. defence has been made, and received without
*January* 1826.
opposition to the payment of these drafts, as

FINDLEY
*vs.*
could have been offered against the firm who

BREEDLOVE,
BRADFORD &
drew them.

ROBESON.

cipal may set      This defence consists mainly in an allega-
the contract       tion, that there was a failure of consideration
aside, but he
cannot enforce for the bills; that the defendants never re-
it, according to
his instructions ceived value for them; that the engine made
to the agent.
by Greene & Co. for the steam-boat Tennessee,
was warranted by them to be of good work-
manship, but that the same was defective and
imperfect, and that the defendants were put to
great trouble and expense to repair it.

To this defence against the plaintiff's right
of recovery, the defendants, in a supplemental
answer, afterwards added a demand in recon-
vention, grounded on the damages they allege
they sustained by the defective engine put on
board the boat by the house of Greene & Co.

The judgment of the inferior court was in
favor of the plaintiff, and the defendants
appealed.

The record comes up loaded with a mass
of testimony, taken by the parties in support
of their respective allegations: before we
can approach it, several important questions
of law have to be disposed of.

The first presented by the pleadings is, the plaintiff's right to sue. The answer alleges that Findley gave no valuable consideration for the drafts, and that he is a partner in the house of Greene & Co. This point has been more than once made in this court, and always without success. The person, who on the face of the bill has the legal title to receive its contents, has the right to sue for them. Whether there be, or not, other persons who have an equitable interest to the proceeds, is a question with which the defendant has nothing to do, unless the assignment is made to deprive him of a defence which he would have had against the person who transferred it. In the instance before us, nothing of that kind appears, and the appellants have had the benefit of every objection which they could have made, had the persons from whom the original consideration moved, sued them. See the cases of *Banks* vs. *Eastin*, 3 *Martin, N. S.* 291, *and Shaw & al.* vs. *Thompson, ibid.* 392.

The next comes from the plaintiff, and contests the right of the defendants to plead in reconvention, because the agreement for an engine under which the claim for damages is made, was originally entered into with the de-

East'n. District.
January 1826.

FINDLEY
vs.
BREEDLOVE,
BRADFORD &
ROBESON.
fendants, and Robertson & Hill of Nashville. On this head we have been referred to *Toullier, vol.* 7, in the chapter in which he treats of compensation and reconvention. This author lays down the general principle, that debts which are offered in compensation must be personal, and that partnership debts cannot be compensated by demands against an individual member of the firm. This doctrine is recognised by the court as sound, but its application against the defendants, in the present case, we are unable to admit. Supposing the parties here, to be all bound *in solido;* the defendants, and Robertson & Hill, who purchased, and the plaintiffs, who sold; if the defendants now before the court, are selected as those from whom *the whole amount* of the engine is to be paid, they should certainly have the right, in the hypothesis just put, of their being responsible *in solido,* to offer the *whole claim* which belongs to the firm as a defence. This is not pleading private debts against a partnership demand, but partnership debts against partnership claims.

But admitting the responsibility of the defendants to be limited to their virile share, they have the right to set up the same pro-

portion of their interest in the engine in recon-
vention. Were it otherwise, the plaintiffs, by
suing them separately, could totally defeat a
right which it is not denied they might exercise
collectively.

This brings us to the most important point
in the cause. The plaintiff contends that all
claims which the defendants had against the
house of Greene & Co., in consequence of the
defective engine originally put on board the
Tennessee steam-boat, were settled finally by
the parties in the year 1820.

This is entirely a question of fact, unless
the position assumed by one of the plaintiff's
counsel be correct; namely, that the war-
ranty of the makers of the engine only ex-
tended to replacing those parts which were
ascertained to be defective.

The contract for the purchase of the engine,
contains an engagement on the part of the
makers, " That the engine and all the ma-
chinery, necessarily connected therewith, shall
be of a good quality; that it shall be executed
in a complete workman-like manner; that when
completed and put on board, it shall propel
a boat as fast as the average of ten of the

East'n. District.
January 1826.

FINDLEY
vs
BREEDLOVE,
BRADFORD &
ROBESON.

swiftest running boats which are running on the western waters."

There is nothing in this warranty that limits the responsibility of the sellers to the value of the machinery which should prove defective, and the law extends the obligation much further. Damages are the loss which a person has sustained, or the gain which he has missed: such is the definition of the Roman jurists, *"quantum mea interfuit, id est quantum mihi abest, quantumque lucrari potui.—Dig.* 46, *tit.* 8, l. 13. In practice, this right is restrained to such injury or damage, as is the direct and immediate consequence of the failure of the contract. The writers on the civil law, illustrate this rule by many examples which it is unnecessary to notice. We think that where the owner of a boat contracts for an engine, and loses the use of her for several months in consequence of defects in the machinery, that the money actually expended, and the loss of gain directly resulting from these defects, come within the definition just given.—*Pothier, Traité des Ob.* 162, 163, 165, *Toullier, Droit Civil Français, Liv.* 3, *tit.* 3, *chap.* 3, *Nos.* 286, 287, *Domat, liv.* 3, *tit.* 5, § 2, *Nos.* 4 & 11, *Civil Code* 49, 50, 51, *p.* 268.

East'n. District.
*January* 1826.

FINDLEY
*vs.*
BREEDLOVE,
BRADFORD &
ROBESON.

Whether there was not a waiver of these damages by an acceptance of machinery to replace that part which was proved defective, is, as we have already stated, the most important question in the cause; our opinion on it, will be best understood, by stating somewhat in detail, the evidence by which it is contended, this accord and satisfaction, is established.

The most important testimony in support of the plaintiff's pretentions on this point, and that on which the judge below decided the cause, is contained in the deposition of one Anthony Defrées, a clerk of the plaintiff. This witness states, that Breedlove, Bradford & Robeson, owners of the steam-boat Tennessee, sent their engineer Grigg, to Cincinnati, for the purpose of adjusting their claim to damages, for the defective engine originally put on board by Greene & Co. That deponent saw a letter of instruction from the defendants to Grigg, by which they authorised him to claim from Greene & Co., such articles as he conceived to be deficient in the engine, and to receive them in full satisfaction of their claim for damages. That accordingly all the articles required by

East'n. District.
*January* 1826.

FINDLEY
*vs.*
BREEDLOVE,
BRADFORD &
ROBESON.

him were furnished, amounting to $1250, and that they were delivered and accepted, on the express agreement, that the same should be in full satisfaction for all claims against Greene & Co. for damages.

Other witnesses testify, that they heard Grigg say he had such a letter as that stated by Defrées, and that he had received the articles mentioned, in full satisfaction of the defendants' claim.

The testimony has been objected to, because the loss of the letter is not sufficiently accounted for, to authorise the introduction of parol evidence.

This objection appears to us, cannot be supported. The writing never was in the possession of the plaintiff; it remained in the hands of the defendants' agent, and diligent search appears to have been made for it among his papers, since his death.

There is much more difficulty in the other ground taken, that the witness has not stated what is true, or that he is mistaken in his recollection of the facts to which he testifies. After due and careful examination of the different proofs which the record exhibits, we feel it impossible to reconcile the witness'

East'n. District.
*January* 1826.

FINDLEY
*vs.*
BREEDLOVE,
BRADFORD &
ROBESON.

testimony with the written evidence, and that evidence too, introduced by the plaintiff himself.

Giving that testimony, however, credit as far as it goes, until met by the written documents, and supposing it true that Grigg did go up with authority from Breedlove, Bradford & Robeson, to select machinery, and release Greene & Co. from all further responsibility for damages, it is clear to us that they did not conceive him authorised, to make such an agreement, and that if they did, they did not close with his proposals, if any such were made. This we think manifest from the following receipt, taken at the time the articles were delivered:

"Received of Wm. Greene & Co., in good order, the several articles specified in the foregoing bill, for Messrs. Breedlove, Bradford & Robeson, which I engage to deliver to them, the dangers of the river only excepted. Provided they have paid, or shall pay, their acceptances of William Greene & Co's. draft for $1532, due on or about the 28th of September last, and shall pay or give new acceptances at 60 and 90 days, for the amount due on two other acceptances of theirs in favor of

FINDLEY
*vs.*
BREEDLOVE,
BRADFORD &
ROBESON.

the said William Greene & Co. which have been returned from New-Orleans under protest; a statement of which amount they have been furnished with—provided the articles shall not be received by the above named firm, they are to be deposited with Messrs. Thomas F. Townsley & Co. at New-Orleans.

        [Signed,]                    E. GRIGGS."

Now so far from this receipt supporting the statement of the witness, that these articles were delivered to Grigg, as agent for Breedlove, Bradford & Robeson, and received by him in full satisfaction of their claim against Greene & Co., the very reverse is established by it. It shows that these articles were not received as the property of Breedlove, Bradford & Robeson, but as that of Greene & Co. The person receiving, engages not to deliver them, unless the former accede to certain conditions; and he promises to hand them over to another house in case these conditions are not complied with. It is clear then that neither Greene & Co. nor Grigg, considered any thing settled by the delivery of these articles. The authority of the latter was either not recognised, or if it was, he and Greene & Co. could not agree on the terms. The words

of the receipt establish, that Grigg was consti-
tuted by Greene & Co., *their agent*, to make
propositions to the defendants, and that if they
accept them, he was to deliver the machine-
ry, if not, he was to hand it over to Thomas F.
Townsley & Co.

That he acted incautiously, or not in good
faith, in delivering the articles in question,
without obtaining a compliance of these con-
ditions, on which he was authorised to deli-
ver them, there can be no doubt: what effect
the receipt of them should have on the defen-
dants' claim, is the next point to which our at-
tention must be directed.

It is one of no difficulty. When the agent
exceeds his authority, and the party dealing
with him knows that he does so, the contract
is void, and the principal can set it aside; but
he cannot claim, it should be enforced ac-
cording to the instructions given to his attor-
ney in fact, for the assent of the other party
is wanting to the agreement.

In the present case, there is no proof that
Grigg ever communicated to the defendants
the conditions on which he was authorised to
deliver the machinery. Admitting the pre-
sumption to be that he did, the bringing this

FINDLEY
*vs.*
BREEDLOVE,
BRADFORD &
ROBESON.

action on the old bills, is sufficient evidence these conditions were not acceded to.

On the whole, we are satisfied the defendants have not in law, lost their right to set up a claim, which appears to us supported by the strongest equity.

The cause must be remanded in order that the damages be ascertained.   2 *Mar. Dig.* 10.

It is therefore, ordered, adjudged and decreed, that the judgment of the district court be annulled, avoided and reversed; and it is further ordered, adjudged and decreed, that the cause be remanded for a new trial, and that the appellee pay the costs of the appeal.

*Whittelsey* for the plaintiff, *M'Caleb* for the defendants.